UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

-v.-

SAJMIR ALIMEHMETI,
    a/k/a "Abdul Qawii,"

                      Defendant.

16 Cr. 398 (PAE)

---

**THE GOVERNMENT'S MEMORANDUM IN SUPPORT OF
PROCEEDING *EX PARTE*, *IN CAMERA*, AND UNDER SEAL
PURSUANT TO CIPA SECTION 4 AND RULE 16(d)(1)**


                                                      PREET BHARARA
                                                      United States Attorney for the
                                                      Southern District of New York
                                                    *Attorney for the United States*
                                                               *of America*

Emil J. Bove III
George D. Turner
    Assistant United States Attorneys
    *Of Counsel*

**TABLE OF CONTENTS**

BACKGROUND ........................................................................................................................ 1

DISCUSSION ........................................................................................................................... 2

    I. Proceeding *Ex Parte* and *In Camera* Pursuant to CIPA Section 4 Is Appropriate.................. 2

    II. The Defendant's Arguments Are Meritless .......................................................................... 8

CONCLUSION......................................................................................................................... 11

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

SAJMIR ALIMEHMETI,
   a/k/a "Abdul Qawii,"

                  Defendant.

16 Cr. 398 (PAE)

The Government respectfully submits this memorandum in further support of its application to proceed *ex parte* with respect to the March 9, 2017 motion for a protective order pursuant to Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3 § 4, and Rule 16(d)(1) of the Federal Rules of Criminal Procedure (the "Section 4 Motion"), and for the Court to review the Section 4 Motion *in camera* and maintain it under seal.  For the reasons set forth below, the defendant's February 16, 2017 motion to compel additional disclosures relating to the Section 4 Motion should be denied.

## BACKGROUND

On February 16, 2017, the defendant moved to compel disclosures relating to the Government's anticipated motion pursuant to CIPA Section 4.  (Dkt. No. 39).  On March 9, the Government filed the Section 4 Motion, requesting permission to proceed *ex parte*, for the Section 4 Motion to be maintained under seal, and for the Court to review the Section 4 Motion *in camera*. The Government has also provided defense counsel with separate notice of the filing of the Section 4 Motion and a copy of the proposed protective order submitted to the Court in connection with the Section 4 Motion.

## DISCUSSION

### I.  Proceeding *Ex Parte* and *In Camera* Pursuant to CIPA Section 4 Is Appropriate

CIPA governs the discovery of classified information in federal criminal cases.  *See United States* v. *Abu-Jihaad*, 630 F.3d 102, 140-41 (2d Cir. 2010).  Congress enacted CIPA to enable the Government to fulfill its duty to protect national security information, while simultaneously complying with its discovery obligations in federal criminal prosecutions.  *See* S. Rep. No. 96-823, 96th Cong., 2d Sess., at 3 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4294, 4296; *see also United States* v. *Pappas*, 94 F.3d 795, 799 (2d Cir. 1996) (stating that CIPA's fundamental purpose is to "'harmonize a defendant's right to obtain and present exculpatory material upon his trial and the government's right to protect classified material in the national interest'" (quoting *United States* v. *Wilson*, 571 F. Supp. 1422, 1426 (S.D.N.Y. 1983) (Weinfeld, J.))); *see also, e.g.*, *United States* v. *Apperson*, 441 F.3d 1162, 1193 n.8 (10th Cir. 2006) (noting that CIPA "evidence[s] Congress's intent to prevent classified information from unnecessary disclosure at any stage of a criminal trial," while simultaneously ensuring that a defendant's right to present a defense is not compromised).

Section 4 of CIPA provides that "upon a sufficient showing," a court may "authorize the United States to delete specified items of classified information from [discovery], . . . to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove." 18 U.S.C. app. 3 § 4.  This provision "clarifies district courts' powers under Rule 16(d)(1) to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security."  *United States* v. *Stewart*, 590 F.3d 93, 130 (2d Cir. 2009) (internal

2

quotation marks omitted); *see also* Fed. R. Crim. P. 16(d)(1) (district courts may "for good cause, deny . . . discovery or inspection, or grant other appropriate relief"). Courts in this District evaluate Section 4 motions to delete or substitute certain items of classified information against the backdrop of well-developed standards set forth in such Second Circuit cases as *United States* v. *Abu-Jihaad*, 630 F.3d at 141, *United States* v. *Stewart*, 590 F.3d at 131, and *United States* v. *Aref*, 533 F.3d 72, 78 (2d Cir. 2008), as well as in *United States* v. *Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989), and *United States* v. *Roviaro*, 353 U.S. 53, 62 (1957).  In short, Section 4 permits the United States to request that a court review classified information—*ex parte* and *in camera*—to determine whether it is discoverable under Rule 16, *Brady* v. *Maryland*, 373 U.S. 83 (1963), *Giglio* v. *United States*, 405 U.S. 150 (1972), or the Jencks Act (18 U.S.C. § 3500), and to protect such classified information from disclosure through various means if it is determined to be discoverable.  *See United States* v. *Libby*, 429 F. Supp. 2d 18, 22 (D.D.C. 2006), *amended by* 429 F. Supp. 2d 46.

Indeed, Section 4 expressly authorizes *ex parte* filings: "The court may permit the United States to make a request for [the] authorization [set forth in the statute] in the form of a written statement to be inspected by the court alone."  18 U.S.C. app. 3 § 4.  Rule 16 is in accord. *See* Fed. R. Crim. P. 16(d)(1) ("At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief.  The court may permit a party to show good cause by a written statement that the court will inspect *ex parte*.").  The authors of CIPA considered the authorization of *ex parte* proceedings to be an important feature of the statute.  For example, the relevant record from the House of Representatives states:  "[S]ince the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules."  H.R. Rep. No. 96-831,

3

at 27 n.22 (1980); *see also* Rule 16 Advisory Committee Notes, 1966 Amendments, Subdivision (e) ("[I]t would defeat the purpose of the protective order if the government were required to make its showing in open court. The problem arises in its most extreme form where matters of national security are involved.").

A contrary approach would be inconsistent with the purpose of CIPA, which is "to protect classified information from unnecessary disclosure at any stage of a criminal trial." *United States* v. *O'Hara*, 301 F.3d 563, 568 (7th Cir. 2002). If motions pursuant to Section 4 to withhold classified information from discovery were not reviewed *in camera* and *ex parte*, the motion practice itself would reveal the very classified information—and commonly, the sensitive technique or techniques used to obtain that information—that the Government sought to shield in the interest of national security. Numerous courts, including the Second Circuit, have recognized this basic point. *E.g.*, *Aref*, 533 F.3d at 81 ("When the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." (internal quotation marks omitted)); *United States* v. *Campa*, 529 F.3d 980, 995 (11th Cir. 2008) ("The right that section four confers on the government would be illusory if defense counsel were allowed to participate in section four proceedings because defense counsel would be able to see the information that the government asks the district court to keep from defense counsel's view."); *United States* v. *Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) ("The legislative history [of CIPA] explains that because the government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." (internal quotation marks and citations omitted)); *United States* v. *Zazi*, No. 10 Cr. 60, 2011 WL 2532903, at *3 (E.D.N.Y. June

4

24, 2011) ("With respect to the government's request to delete irrelevant classified materials from discovery, an adversary proceeding would be particularly anomalous, as it would provide defense counsel access to sensitive information to which, if the government is correct, they are not entitled under any theory.").

That one or more defense counsel in a given case has (or could obtain) security clearance is of no moment. Only individuals with a "need-to-know" are permitted access to classified information.  *See* Executive Order 12968, 60 Fed. Reg. 40,245 (Aug. 2, 1995) (discussing access to classified information); *United States* v. *Daoud*, 755 F.3d 479, 484 (7th Cir. 2014) (reasoning that "in addition to having the requisite clearance the seeker must convince the holder of the information of the seeker's need to know"); *see generally CIA* v. *Sims*, 471 U.S. 159, 175 (1985).  All Section 4 motions contain information deemed by the Executive Branch to be highly sensitive and important to the national security of the United States; the need to keep such information closely guarded is manifest.  Thus, a given defense counsel's security clearance—no matter what level—in no way obviates the need for a Section 4 motion to be considered *ex parte* and *in camera*.  *See, e.g.*, *United States* v. *Amawi*, 695 F.3d 457, 473 (6th Cir. 2012) ("The possession of a security clearance only becomes relevant after the district court determines, in accordance with section 4, that any classified information is discoverable."); *see also United States* v. *Sedaghaty*, 728 F.3d 885, 909 (9th Cir. 2013) ("[T]he simple fact that defense counsel held security clearances does not mean that the attorneys were entitled to access the government's classified filings.").  For example, in *United States* v. *Abu-Jihaad*, 2007 WL 2972623, the district court held that a motion pursuant to Section 4 could be considered *ex parte* regardless of any security clearances held by counsel:

5

> If the Court were to conclude that some or all of the information is discoverable, the Government would then need to decide prior to court-ordered disclosure whether to produce the information to defense counsel subject to appropriate security clearance, seek alternate relief under CIPA—such as substitution of a summary or statement of the discoverable information—or file an interlocutory appeal under CIPA § 7. If, on the other hand, the Court decides that the information is not discoverable at all, Defendant is not entitled to production of the information, regardless of whether his counsel is willing to submit to security clearances.

*Abu-Jihaad*, 2007 WL 2972623, at *2 (citations omitted).

Similarly, in *United States* v. *Libby*, the court was called upon to determine whether to permit defense counsel to review a Section 4 motion where defense counsel (and the defendant) held appropriate security clearances. The court explained that the relevant question was not whether defense counsel had appropriate clearance, but rather whether defense counsel had both clearance and a "need to know." "It is axiomatic that even if the defendant and his attorneys had been granted the highest level of security clearances, that fact alone would not entitle them to access to every piece of classified information this country possesses." 429 F. Supp. 2d at 24 n.8; *see also, e.g.*, *United States* v. *Zazi*, 2011 WL 2532903, at *3 ("[The defendant's] lawyers both possess top secret security clearances, which afford them access to the classified summaries the government will shortly provide, but those clearances do not mandate an adversary hearing or access to immaterial classified information for which counsel has no legitimate need."); *United States* v. *Ahmad*, Nos. 04 Cr. 30, *et ano.*, 2013 WL 1899792, at *3 (D. Conn. May 1, 2013) ("Because the court finds that, in accordance with section 4, the classified information is not discoverable, a clearance would not have entitled the defense to see any of the information." (internal quotation marks omitted)).

Courts both within and outside of this District have uniformly upheld the practice of proceeding *ex parte* where, as is the case in the Section 4 Motion, the substance of classified information at issue is discussed in the motion papers. *E.g.*, *Abu-Jihaad*, 630 F.3d at 143 (rejecting argument that government's *ex parte* and *in camera* submissions were improper (citing *Aref*, 533 F.3d at 81)). Three courts in this District recently rejected arguments substantially similar to those presented by the defendant here, thereby permitting the Government to proceed *ex parte* with— and reviewing *in camera*—motions for protective orders pursuant to Section 4 and Rule 16(d)(1):

- Transcript at 15-16, *United States* v. *El Gammal*, No. 15 Cr. 588 (ER) (S.D.N.Y. Jan. 3, 2017) (attached as Exhibit A);

- Transcript at 32, *United States* v. *Seng and Yin*, No. 15 Cr. 706 (VSB) (S.D.N.Y. Sept. 12, 2016) (attached as Exhibit B); and

- Transcript at 4-7, *United States* v. *Jones*, No. 16 Cr. 019 (PGG) (S.D.N.Y. Aug. 16, 2016), at 5 (attached as Exhibit C).

*See also, e.g.*, Memorandum and Order, *United States* v. *Pham*, No. 12 Cr. 423 (AJN) (S.D.N.Y. Nov. 11, 2015) (Dkt. No. 61); Memorandum and Order, *United States* v. *al Liby*, No. S10 98 Cr. 1023 (LAK) (S.D.N.Y. July 16, 2014) (Dkt. No. 1651); Memorandum Decision and Order, *United States* v. *Mostafa*, No. 04 Cr. 356 (KBF) (S.D.N.Y. Jan. 17, 2014) (Dkt. No. 233); Order, *United States* v. *Abu Gayth*, No. S13 98 Cr. 1023 (LAK) (S.D.N.Y. Aug. 19, 2013) (Dkt. No. 1285); Order, *United States* v. *al Fawwaz*, No. S7 98 Cr. 1023 (LAK) (S.D.N.Y. Aug. 19, 2013) (Dkt. No. 1284); Opinion and Order, *United States* v. *El-Hanafi*, No. S5 10 Cr. 162 (KMW) (S.D.N.Y. Feb. 24, 2012) (Dkt. No. 94); *United States* v. *Ahmed*, No. 10 Cr. 131 (PKC), 2011 WL 4915005, at *6 (S.D.N.Y. Sept. 23, 2011); Order, *United States* v. *Ghailani*, No. S10 98 Cr. 1023 (LAK)

(S.D.N.Y. Sept. 11, 2009) (Dkt. No. 782); Order, *United States* v. *Kassir,* No. S2 04 Cr. 356 (JFK) (S.D.N.Y. Jan. 26, 2009) (Dkt. No. 57).

These rulings are consistent with uniform decisions throughout the country, CIPA's purpose, and the principles discussed herein.  They are also consistent with federal court practice in other contexts.  Specifically, as the D.C. Circuit noted, *ex parte* CIPA practice is "closely analog[ous]" to more familiar *ex parte* practice:

> When a court (rather than the prosecutor alone, as is ordinarily the case) reviews evidence in camera to determine whether it constitutes a witness statement subject to disclosure under the Jencks Act, 18 U.S.C. § 3500(b), or exculpatory material subject to disclosure under *Brady*, the defendant is likewise not entitled to access any of the evidence reviewed by the court . . . to assist in his argument that it should be disclosed.

*United States* v. *Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006) (internal quotation marks and citations omitted).

## II.  The Defendant's Arguments Are Meritless

The Section 4 Motion establishes good cause for proceeding *ex parte*, and for the Court to review the motion *in camera* and maintain it under seal.  Accordingly, the Court should follow the unbroken chain of authority allowing motions pursuant to Section 4 to be handled in this fashion.  (*See* Ex. B at 27 (defense counsel conceding that no court has granted an application for defense access to a Section 4 motion)).  The defendant begins his argument to compel further disclosures relating to the Section 4 Motion with a series of bold assertions, such as that "this is a case that involves only law enforcement and [the defendant]" and "there is [no] national security interest at stake."  (Def. Mem. at 2).  But he is not in a position to make those determinations, and his claims do not support the unprecedented disclosures he seeks. *See Zazi*, 2011 WL 2532903, at

8

*2 n.3 ("[A]s Section 1 of CIPA recognizes, classification is an executive decision, one that courts are ill-suited to second-guess.").

As numerous courts have found, it is of no moment that "[t]here is cleared counsel" in this case. (Def. Mem. at 7). For example, in *Jones*, Judge Gardephe reasoned:

> [D]efense counsel's argument that the security clearance justifies in sort of an automatic fashion access to classified information is misguided. Of course, one could have a security clearance and not have a need to know the classified information in question. The mere possession of a security clearance doesn't mean that the disclosure of classified information is appropriate, it's only appropriate if the person seeking access has the need to know the information.

(Ex. C at 6). Judge Gardephe then explained that "there's a need to know" in connection with a motion pursuant to Section 4 only where the *Aref* standard is met, and that courts must first "make a finding as to whether the information in question meets the standard." (*Id.*). Thus, the defense is not entitled to any of the information in the Section 4 Motion at this time.

The defendant's citation to *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93 (2d Cir. 2008), is unavailing, as that case is entirely consistent with the reasoning in *Jones*. (Def. Mem. at 8). Indeed, in the paragraph cited by the defendant, the court observed that "the discretion conferred upon district courts by CIPA encompasses entry of an order permitting the government to withhold altogether 'classified information that might otherwise have been discoverable . . . .'" 552 F.3d at 122 (quoting *Aref*, 533 F.3d at 76). And because Section 4 permits the Government to "withhold altogether" classified information meeting the *Aref* standard, *id.*, it is irrelevant that "[s]haring the government's CIPA letter with defense counsel will <u>not</u> result in the unauthorized disclosure of classified information," (Def. Mem. at 8 (emphasis in original)). Where the Government establishes good cause for a protective order pursuant to Section 4 and

9

Rule 16(d)(1), there is no disclosure obligation to the defense or the defendant, and concerns about secondary leakages of classified information are not a material part of the calculus.

Finally, the Section 4 Motion does not require the Court to act as the defendant's "surrogate advocate or defendant." (Def. Mem. at 9). Rather, the motion necessitates an application of the legal standard articulated in *Aref*, which, as Judge Ramos observed, "has been held to adequately balance the government's need to protect the sensitive classified information with a criminal defendant's ability to mount an adequate defense." (Ex. A at 16). Moreover, contrary to the defendant's suggestion, the Government's legal arguments in support of the Section 4 Motion are not a mystery. (Def. Mem. at 10). As in *Jones* and other cases involving applications pursuant to Section 4:

> [I]t's obvious from what the government has stated publicly what the issues are. The government contends that that information in question meets the standard, the classified information, that is, it is information the disclosure of which presents a serious danger of causing damage to national security, and they're arguing that it meets the standard set by CIPA and should be withheld because it doesn't constitute information that is helpful or material to the defense within the meaning of the case law that I cited. So I don't find that it's necessary for any additional disclosure of the government's legal position to be made on a non-*ex parte* basis.

(Ex. C at 6-7). In this case, the Government has also taken the position that much of the classified information at issue in the Section 4 Motion is not discoverable pursuant to Rule 16, *Giglio*, or *Brady*. The application of these standards, as well as the *Aref* standard, present circumstances where the defense typically has "no access." (Ex. B at 30). Based on the information set forth in the Section 4 Motion, a departure from the well-established procedures for handling Section 4 motion practice in this case would be particularly contrary to bedrock CIPA principles.

10

## CONCLUSION

Because this filing and the Section 4 Motion collectively establish good cause for proceeding *ex parte*, allowing *in camera* review, and sealing, the Court should deny the defendant's motion to compel further disclosures relating to the Section 4 Motion.

Dated:  New York, New York
       March 9, 2017

                                        Respectfully Submitted,

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York

                        By:     _____
                                        Emil J. Bove III
                                        George D. Turner
                                        Assistant United States Attorneys

Cc:    Defense Counsel
       (Via ECF)

11