Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 1 of 57
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/29/16   Page 2 of 98

1

G9cWsenC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

            v.                          15 Cr. 706 (VSB)

NG LAP SENG,
a/k/a "David Ng" and
JEFF C. YIN,
a/k/a "Yin Chuan,",

                                        Oral Argument
            Defendants.
------------------------------x

                                        New York, N.Y.
                                        September 12, 2016
                                        12:15 p.m.

Before:

                HON. VERNON S. BRODERICK,

                                        District Judge

                      APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
DANIEL C. RICHENTHAL
JANIS M. ECHENBERG
DAVID S. JONES
     Assistant United States Attorneys

HUGH H. MO
     Attorney for Defendant Ng Lap Seng
     -and-
PARK JENSEN BENNETT LLP
BY:  TAI H. PARK
     CHRISTOPHER GREER
     -and-
SHAPIRO ARATO LLP
BY:  ALEXANDRA A.E. SHAPIRO

DAVID E. PATTON
     Federal Defenders of New York, Inc.
     Attorney for Defendant Yin
BY:  SABRINA P. SHROFF
     ALLEGRA GLASHAUSSER

G9cWsenC

THE COURT: Could the parties please note their appearances.

MS. ECHENBERG: Good morning, your Honor. Janis Echenberg, for the government, and with me at counsel table from the criminal division of the U.S. Attorney's Office is Daniel Richenthal and also from the FBI Special Agent Ryan Carey. And I believe Mr. Jones can introduce himself.

MR. JONES: Yes, your Honor. I'm David Jones from the civil division of the U.S. Attorney's Office, and I've been requested to appear here today by the State Department. In the event any questions concerning the U.N.'s privileges and immunities arise, I'll be prepared to address those from the perspective of the State Department, if that's helpful.

THE COURT: All right. Thank you.

MR. MO: Good afternoon, your Honor. Hugh H. Mo for Mr. Ng Lap Seng, and his appearance, by the way, has been waived, with your Honor's approval. And with me is Alexandra Shapiro, my cocounsel, as well as Tai Park as well as Christopher Greer.

MS. SHROFF: Good afternoon, your Honor. Sabrina Shroff and Allegra Glashausser for Mr. Yin, whose appearance today is waived. He is still in California. He is going to be informed of the proceedings both with the conversation with the two of us and we will provide to him a copy of the transcript of today's proceeding.

G9cWsenC

THE COURT:  OK.  Is he aware of it?

MS. SHROFF:  He is, your Honor, but we haven't gone over all the various issues that will be discussed.

THE COURT:  The only thing, obviously, if he requests a copy of the transcript, there will be some substantive issues that we discuss, as I mentioned in my order, but his appearance, as Mr. Ng's appearance, will be waived for purposes of this court proceeding.  I will say that most of the discussions, I think, that we'll be having relate to legal issues and oftentimes clients decline to be present, but having said that, obviously I'd be more than happy for them to be here and it's their right to be here.

First I want to talk about motion schedule, and I'll just run through where things currently stand.  Right now the date for pretrial motions, with the exception of the motions that had already been filed, would be today.  Ms. Shroff and Ms. Glashausser had asked for an extension of time for two weeks to September 26.  And Mr. Park on behalf of Mr. Ng indicated that if it was going to change the trial date, Mr. Ng would also like to avail himself of additional time.  The government expressed concern that there was going to be a backup of motions and that that might impact the government's ability to respond and also perhaps the trial date of January 23.

In response, Mr. Park wrote, in an Emily Litella

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 4 of 57      4
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/29/16   Page 5 of 98
G9cWsenC

moment, and basically said "never mind," as I understand it; in other words, that you would file your briefs today and adhere to the schedule because you didn't want, again, anything to happen with the trial date of January 23.

This is what I'm going to propose, and then I'll hear from the parties. I took a look at the transcript from July 11, where we talked about motion schedules, and I noted that we for no particular reason set 30 days for a reply. What I would propose is this:

Ms. Shroff, Ms. Glashausser, you can have until September 26 to file your opening brief. The government will be given an additional two weeks, and I recognize that literally falls after Thanksgiving weekend, so I'd be willing to give you until November 30 to get your papers in, and then the date for the replies would remain consistent. In other words, if Mr. Park and counsel for Mr. Ng decide to file their papers today, fine. Actually, I would suggest that maybe sooner rather than later would be better because obviously I suspect there are going to be a lot of motions that I'm going to have to deal with, as well as I'm sure there are going to be in limine motions. So I would say December 16 for the reply, because if I'm giving the government an additional two days, I'll add two days on.

But if at all possible, I guess, Ms. Shapiro, Mr. Mo, Mr. Park, if you can get it in earlier, I would ask that you do

Case 1:15-cr-00588-ER Document 69-2 Filed 09/29/16 Page 5 of 98
G9cWsenC

that.  Obviously it gives you more time on the back side if you think you're going to have a lot to say on reply.  That's what I propose doing.  It doesn't really alter the schedule and it keeps us, I think, on track for trying the case on January 23.

First, Ms. Shroff, since it was the application of Mr. Yin, I'll hear from you first.

MS. SHROFF:  Your Honor, my bigger problem is the trial date.  When I was here setting the trial the last time, I think I was clear.

THE COURT:  Early January trial before Judge Wood.

MS. SHROFF:  Yes, but I had also this problem trial before Judge Ramos, and that trial was supposed to start in ample time to be completed and for me to have enough time to work on Jeff Yin's trial.  In the Judge Ramos case, which is United States v. Gammal, the U.S. Attorney's Office in their wisdom decided to go get a FISA warrant at the last moment and then give us FISA notice.  If they gave us FISA notice, we have to do FISA briefing, so that pushed that trial date into early December.  Now I have a December 5 trial date before Judge Ramos, and I was supposed to have completed that trial well before December 5.  The December 5 trial is a terrorism trial. We anticipate it's going to take us a week just to pick the jury, and then it's a two-week trial.  There's no way for me to have a January 23 trial before this Court on Jeff Yin.  I have an "in" defendant in Gammal and an "out" defendant in Yin.  So

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G9cWsenC

even if I were to give away my Judge Wood's trial, which seems will now be a nonissue because the prosecutor in the Gammal case is also the prosecutor in the Wood case, so he can't be in two places at one time, and neither can I, so we've decided to move the Wood case to later on, but even if I were to ask someone to take over the wood case, I still would not be able to do a terrorism trial and this trial back to back with no break in the middle.

THE COURT:  All right.  This is what I propose to do. Let's go through some of the other issues, Ms. Shroff.  Did Judge Ramos know about this trial also when they rescheduled that case?

MS. SHROFF:  No, because in all candor, no, I didn't really have any thought that an "in" defendant, who's been in custody longer than Jeff Yin, that case is almost a year older. And the request was ours, so it's not Judge Ramos's fault; it's completely mine.

THE COURT:  OK.  No.

MS. SHROFF:  Your Honor, I understand what you're saying, but, yes, I didn't tell him.

THE COURT:  That's fine.  Have you spoken with Mr. Ng's counsel and the government concerning this issue?

MS. SHROFF:  Sure.  Mr. Ng's counsel wants a January 23 trial date.  I'm assuming that the government wants the January 23 trial date.  I think the best solution would be to

G9cWsenC

just sever the two defendants, let the government and Mr. Ng be happy and go with the January 23 trial date and let us go later, but I'm assuming nobody's going to go for that.

THE COURT:  The main thing is efficiency.  What you'd be asking, in essence, is for us to impanel two juries for the same case for two defendants who are not incarcerated for whom there isn't any speedy trial issue.  Putting aside I have no problem trying cases and presiding over cases, but it seems to me to be inefficient.  We'll come back to this issue of the trial date a little bit later because I will have to give it some thought, quite frankly.  I'll have to give it some thought about how best to handle that, and I'll obviously hear from Mr. Ng's counsel about this issue and from the government about the issue a little bit later.  But let's talk about some things that I think are a little bit more substantive.

First I want to deal with the issues in my order, specifically, the first issue.  I'd like to ask the government whether in connection with the documents that have been produced by the United Nations, has the government produced all the documents that it has received from the United Nations to the defense?

MR. RICHENTHAL:  Yes, your Honor, typically within days of receipt.

THE COURT:  OK.

Mr. Park, I want to talk a little bit about the reply.

Case 1:15-cr-00588-ER   Document 69-2   Filed 09/29/16   Page 9 of 98

G9cWsenC

I know you made a request to file a reply on the 19th, and as a scheduling matter I don't really think I have an issue with that. Quite frankly, at least at this juncture, I don't feel I need a reply. I've read through all of the papers that have been submitted. I admit I haven't given it a second pass through, but I'm not sure I need a reply, so I want to talk at least a little bit about the different categories of documents that as I understand it are part of the request, the first I guess being the PGA documents, which as I understand it would be documents that would be coming in entirety in light of the government's representation that they've produced documents that they've received from the U.N., they've produced to the defense, these would be documents that would be in the U.N.'s possession that would be coming from them that, as I understand it, I have no power or authority to direct the United Nations to do anything. But based upon the letter that was attached to the government's submission, as I understand it, and your letter also, Mr. Park, the U.N. has indicated that they'll work with the defense as they've worked with the government, and then I assume produce or not produce or produce whatever they feel is an appropriate amount of documents.

I guess what I'll say is this. With regard to the argument about the United Nations and an indication in press or media that they're cooperating with the government and somehow creating more of a connection with the government, I reject

Case 1:16-cr-00398-PAE   Document 41-2   Filed 03/09/17   Page 9 of 57    9
Case 1:15-cv-00388-ER   Document 69-2   Filed 09/23/16   Page 10 of 58
G9cWsenC

that notion.  As you point out, public companies and even private companies make statements that they're cooperating with the government, but that doesn't convert those entities to be sort of government agents, nor does it mean that those entities merely turn over documents without, and I think my former clients would be very surprised and your current and former clients would be very surprised if you came in and said, We have to turn over, they've asked for this stuff, without any filter, in other words, saying, No, we're not going to do that.  And in this case, in any event, it's a statement in the media from an entity that has immunity, and so they'll cooperate as they see fit, as I understand it.

I guess what I'm saying is I don't think there's any direction that I would give the government in connection with this, so I think with regard to those documents, at least a reply with regard to those, I don't see that there's much of an issue.  And quite frankly, I'll suggest that it would probably be more beneficial just to proceed with the communications, whatever they may be, that you may be having with the United Nations to get whatever documents that you can from them relating to the PGA documents.  But I'll hear from you with regard to those documents or at least that category of documents.

MR. PARK:  Thank you, your Honor.  Frankly, the only reason I asked for an opportunity to file a reply was because I

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 10 of 57   10
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/29/16   Page 11 of 98
G9cWsenC

was concerned that your Honor would have exactly this reaction and rule before I had a chance to be heard.

THE COURT:  Sure.

MR. PARK:  And I was on trial last week and preparing for trial before, otherwise I would have filed a reply by today, frankly.

THE COURT:  Just to be clear, I'm not going to say that you can't file it.  What I'm saying is that, at least my reading of the law, and also, quite frankly, my power to do anything, I don't have any, with the exception of the government, but I'm not sure what I would do or say to them.

MR. PARK:  Here's what I would ask you to say to the government, to cut to it, just direct the government to do everything in its power to get the documents that the defense is seeking so that the trial is not delayed and that Mr. Ng's due process rights are not jeopardized.  That's all.  And they may say, OK, we'll do the best we can, but they will at least be under a court order.

Let me explain to you, Judge, some of the chronology that I think is important for you to understand as you think about the serious problem that we are having as defense counsel in preparing for the defense of Mr. Ng.  We submitted to the government a request for these U.N. documents because we have been receiving from the government periodically, and it's not clear where the rhyme or reason is, but the documents are

G9cWsenC

clearly from the United Nations. The U.N. has submitted to the government with a Bates number and a designation below that says "voluntarily produced without prejudice to our immunity." Now, they've been doing that, and they have had that relationship with the government in terms of getting requests from the government, producing to the government with this designation, presumably for months, and it may well precede the investigation. We don't know.

Now, here we are. We're trying to get documents that we think the government should have collected, reviewed, even before the prosecution was begun so that they can assess whether they've actually had a criminal defendant on their hands versus somebody as to whom there may simply be probable cause as to whether a crime was committed.

Now, we don't profess to tell the government how to do its job, but what we do know is this. They have been working with the United Nations for a period of time to collect documents on a regular basis, documents presumably that the government believes are essential to their case and in response to requests that they have fashioned for their case. Fair enough. Now they are on notice, if they weren't before. They are on notice as to what the defendants' views are as to what is material to the defense. All we're asking is that they use their same office and the channels they've already established with the United Nations to obtain those documents. Given the

G9cWsenC

shortness of time between now and setting the trial date, Judge, we think it is eminently fair.  It is typically the U.S. Attorney's position that they represent justice and not just winning the case.  All we're saying is please give us the documents that we have articulated are necessary to prepare for the defense of Mr. Ng, if they're not outright Brady, and we've set out some of the reasons why we think some of them aren't truly Brady materials.

That's the first part.  The second part is this.  When we first made our request to the government, we had a telephone call with them, and they said, Talk to Dan Gitner, he's representing the United Nations.  I happily called up Dan Gitner and had a discussion with him.  It turned out that a request that we had written, Mr. Mo had written a carefully drafted document request to the United Nations that sought some of the same categories of documents.  It was directed to essentially the general counsel of the United Nations.  Weeks later we're told by Mr. Gitner it never got to him.  The mail doesn't apparently work.  So it never got to him.  If you're going to make a request, you've got to go through the U.S. Mission, so we did that.

We sent the same exact letter to the United Nations Mission, to the U.N., got no response.  I followed up just last week asking, Did you ever get our request, and if so, where is it?  And finally he emailed a response to me saying yes, we got

G9cWsenC

it.

In the meantime, as your Honor will probably have seen in their opposition to our motion to compel, the government attached a letter from the United Nations to the U.S. government through the U.S. Mission, Ambassador Samantha Powers, her office, saying, We got this request finally and here's all the things that have to get done, we have immunity, we have this, we have that, an elaborate international communique, if you will. Now, that was sent to the government, not to us, not to the party that actually asked for it, but to the government, talking about our request. That was sent to the government on August 18. That's a letter dated August 18. We don't find out about it, your Honor doesn't find out about it, until 12 days later when the government appends it to their opposition to the motion to compel, on August 31.

Here's the point, Judge. It is, to put it lightly, a byzantine system of channels. We do not have the wherewithal.

THE COURT: Mr. Park, I'll cut to the chase.

Look, I'm not going to issue an order, but what I'm going to say, Mr. Richenthal, to the extent you have contacts and you can facilitate communications with whoever the people are that need to be communicated with to get the documents, I'd ask that you do that. Let me make one thing very clear. While I have no doubt that the requests were carefully crafted, there are probably a lot of those things, there may be some things,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 14 of 57   14
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/29/16   Page 15 of 98
G9cWsenC

and I think you've already started this process of, as you say, prioritizing, but in circumscribing the request. I think that in the end of the day, I don't know where the U.N. is going to come out and what they're going to produce, but you may be in a better position than you were if you were to come to me and try to get a 17(c) subpoena to get the documents. What I'm going to do, and again if there is an issue or problem, I'm going to ask the government to basically, when you call and if you're having problems, to try and put you in touch to expedite this as fast as we can.

I understand that there's a process. You referred to it as byzantine. I think there is just a protocol concerning the way these things happen, that I think I would hazard a guess that prior to these prosecutors being involved, they probably, What do you mean, just call them up and you get the documents. For whatever reason, that's not apparently the way it works. I'm going to do that in connection with this, and let me hear from Mr. Richenthal.

MR. PARK: Thank you, your Honor.

THE COURT: Do you have an objection to that, Mr. Richenthal?

MR. RICHENTHAL: Absolutely not. We've already done it and we've continued to do it, and indeed the defense already has the information. In fact, well before we came into your Honor's courtroom this afternoon, Mr. Park emailed the

G9cWsenC

pertinent person at the United States Mission to the U.N.  That email address is not public.  Mr. Park, for his own purposes, was able to determine who to contact, and he did it promptly, as is his right.  So if there is some confusion, we're happy to remind him of the information he already has.

THE COURT:  It's not a back-and-forth thing.  My object, and again by me commenting on these documents I'm not in any way indicating that, A, they necessarily will be relevant; B, they necessarily will be admissible at all.  I think that's for another time.  With regard to the scope of the request, it's up to the U.N. and its counsel to determine whether or not they, how they view the scope.  The issue is there's no recourse.  They have committed to, as I understand it, and I think the actual wording is "willing to cooperate to facilitate the proper administration of justice in this case," and that they've agreed to consider the request.  I take them at their word, whatever that means.  To the extent they feel it's appropriate, they'll respond.

Mr. Jones, I don't know if you have anything to add.  Am I correct at least on the law?

MR. JONES:  Yes, and I did want to convey -- and thank you, your Honor, for the opportunity to be heard -- that the State Department and the U.N. are interacting in the ordinary and appropriate course.  I can confirm that I've been informed by the State Department that it has conveyed the defendants'

G9cWsenC

document requests through the proper channels, which is the U.S.U.N., the U.S. Mission to the United Nations, to the U.N. That occurred on August 29.  In case it helps and because I may never be back here again, let me say one thing.

THE COURT:  Don't be so sure about that.

MR. JONES:  One can always hope.  I'll try to keep hope alive just by making clear, first off, I was asked by the State Department at the U.N.'s request to make clear the U.N.'s immune status, and I don't think there's any confusion about that, and also to underscore that the U.N. has committed voluntarily and stated voluntarily, just as your Honor said, using the exact same words, its willingness to cooperate and facilitate the proper administration of justice.

There is just one other thing I want to note about exactly how the immunities work and particularly the limits on the executive branch's authority.  The government's opposition to the motion to compel noted Section 2 of Article II of the convention on the privileges and immunities of the United Nations, which conveys immunity from legal process on the U.N. That same convention, in Section 4, specifically provides that the archives of the U.N. are, it's called inviolable.  It's the term of art, and I'm told by the State Department that means that the executive branch or any other component of government is equally powerless to compel the U.N. to act or produce documents.  I want to make that very explicit, that that's the

G9cWsenC

terms of the convention, and it is the State Department's understanding that the executive branch simply lacks the power to compel the U.N. to act, so it is indeed the case that following this voluntary protocol and enlisting the assistance and cooperation of the U.N. is the way to go and the only way to go.

The other thing I would note, and I'm a stranger to the case and the issues presented, but the U.N. has advised that it's very concerned about the extraordinary breadth or what it perceives as the extraordinary breadth of the defendants' requests, both just simply from a searchability and administrability perspective and then also just on the substantive legal perspective.  I'm not here to comment on that, but I did want that to be conveyed to the Court and all parties so that everyone's clear the U.N. undertakes to work cooperatively, but at the same time it's going to have a difficult time handling the current requests.

THE COURT:  Sure.  And I think, Mr. Park, I took it from your letter that the process at least of, whether it's winnowing down or narrowing, whatever it may be, has begun.

MR. PARK:  It has, your Honor, and as your Honor knows and everyone who's experienced in this area knows, you send out a broad request and then you have a discussion with counsel for the respective parties to get the priority you need.  It just took so much time to figure out who the parties are, and we've

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 18 of 57   18
Case 1:13-cr-00988-ER   Document 69-2   Filed 09/23/16   Page 19 of 98

G9cWsenC

subsequently sent a winnowing-down letter to the U.S. Mission for that process, and I remain hopeful that with Mr. Richenthal and Ms. Echenberg's cooperation that we'll start getting things, and I appreciate the Court's input.

THE COURT:  Sure.  What I will say is this, obviously what we don't have control over is the timing, and there are a series of communications that have to happen before, I think, even the requests make their way to a decision maker, and I'm not saying there's one person, but whoever is going to make the decision about production of documents or even engage in a back and forth.  I guess as quickly as you can establish, and I don't know if it will be even quick, the ability to do that back and forth as you would normally do in the case, the better off we would be in terms of obviously where we currently stand in the trial date.  But I'd ask that you keep me informed with regard to that progress, and this will come up in a bit when we start talking about the trial date also.

As I understand it, the next tranche of documents are the conference center documents, which as I understand, based on the government's representation they've produced the documents they've received from the United Nations and relating to this tranche of information.  Were there other entities in those requests?

Let me ask this of the government.  With regard to the conference center requests, I understand you've turned over all

Case 1:16-cr-00308-PAE Document 41-2 Filed 02/09/17 Page 19 of 57
Case 1:15-cr-00588-ER Document 69-2 Filed 09/29/16 Page 20 of 98

G9cWsenC

the United Nations documents relating to that. Were there other entities from whom the government would have gotten documents that are part of those requests? In other words, is there some other entity? I assume it's just the United Nations. That's all I want to confirm.

MR. RICHENTHAL: I'm not sure what other entities there would be, so I guess I don't know how to answer your Honor's question. We've certainly turned over every single thing the United Nations or any component thereof has given us typically within days. And let me just say apropos of that, Mr. Park made a representation that we're working with the U.N., there's no rhyme or reason, that's not accurate. We don't work with the U.N. We make requests to the U.N. and then the U.N. complies or doesn't comply, and that can take a significant period of time. When they give us documents, within days we turn them over. There's no working relationship with the U.N. That's not a knock on the U.N., simply an inaccurate statement on Mr. Park's behalf. But I'm not aware of any other entity. When we get documents we turn them over. We don't slice and dice them.

THE COURT: OK. Referring to the conference center documents, "all the documents regarding communications," and this is the second request in Mr. Park's submission on page 11, and it's item 6, "all documents regarding communications between the United States government and the government in

Case 1:16-cr-00308-PAE Document 41-2 Filed 02/09/17 Page 20 of 57    20
Case 1:15-cr-00588-ER Document 69-2 Filed 09/29/16 Page 21 of 98
G9cWsenC

Antigua regarding the prosecution of Ambassador Ashe, including, but not limited to," and then it lists various subsets within that.

MR. RICHENTHAL: I'm sorry. I didn't realize that's what your Honor was asking.

THE COURT: I'm sorry. That's my mistake. The conference center documents are actually above that. The next documents are the internal documents. The conference center documents refer to information, internal communications with the United Nations, minutes of meetings within the United Nations, positions taken or arguments by members of the United Nations.

I think all of those documents, and just correct me if I'm wrong, Mr. Park, all of those documents are U.N. documents for the conference center document request.

MR. PARK: I'm just taking a quick look. I think that's right.

THE COURT: All right. I apologize. I had jumped ahead. Similarly with regard to the PGA document requests, Mr. Park you should work in a similar way to get whatever documents you feel are important with regard to that.

MR. PARK: Yes, your Honor.

THE COURT: Now I think we're to the internal documents, and with regard to that, Mr. Park, it's up to you. As I said, I'm not going to stand in the way of you filing a

G9cWsenC

reply. With regard to the first two categories of documents, I don't think a reply is necessary.

With regard to the third category of documents, which are really internal documents that are related to the United States and the United States has opposed that for various reasons, I think if there is going to be a focus of your reply, it should be there. In addition, and I don't believe this necessarily was raised, I know that you've raised it in the context of the purpose or the motivation behind the prosecution of the case and suggest that there may be a political or international political motivations, and I understand that argument, but what I'd like you to also address in your reply is putting aside the government's motivations and how they came to decide to prosecute one person versus another, how they decided on the timing, what charges they intended to bring typically are covered by the deliberative process privilege.

I don't think either party has addressed that issue in this context. I suppose your argument will be, Well, that may be well and good, but we believe our Brady argument, everything trumps that, but I'd like you to address the issue of deliberative process, in cases where basically the government's thought process -- by saying that I'm not saying how or what thought process was involved. I'm just saying that normally those communications are protected, and I don't know under what circumstances that protection is vitiated or waived, or however

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 23 of 57   22
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/29/16   Page 23 of 98
G9cWsenC

you want to put it, putting aside again the substance of what's being sought.

I'll make just an observation and apologize in advance to the assistants and the agent in this case. It would seem odd to me that that sort of responsibility in terms of the government's own position vis-à-vis another country is being entrusted to people who are prosecutors, not State Department people and people who have experience in what they're doing.

Off the record for a second.

(Discussion off the record)

THE COURT: I understand the argument. I'm just not sure I see the connection in the sense that there would be, based upon what you've cited in your papers. So I would address sort of that aspect of it also, in other words, and that goes to sort of more of what the support is that gets you to the place that you're seeking, in other words, to get the internal communications and actually whether or not there is any evidence to suggest that those communications would even exist in the form that you're seeking. I mean, I guess with regard to the third, that's fine. And again I'm not saying you don't address the other two tranches of documents, but I think it's really the third tranche because certain of those documents are within the control of the United States Attorney's Office. There are other documents that you've requested that I think are internal State Department documents.

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 23 of 57   23
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/29/16   Page 24 of 98
G9cWsenC

Well, let me ask this. Am I correct that it's not only documents that were necessarily communicated to the U.S. Attorney's Office; am I correct that some of the requests deal with documents that may never have made it to the U.S. Attorney's Office, just internal communications within the State Department?

MR. PARK: That's correct, your Honor.

THE COURT: All right.

MR. PARK: Can I address, and I will address the issues that your Honor has flagged in my reply, but the last question you asked is directly related to why kind of the national foreign relations issue would be entrusted to prosecutors. First of all, this is the Southern District U.S. Attorney's Office. Secondly, I will reemphasize --

THE COURT: And everybody in the office is going, Yeah, it is the Southern District.

MR. PARK: That office has for decades been entrusted with matters of national importance, so they're well versed in how to deal with these things.

Secondly, it took a mere arrest and mere complaint for the U.N. to stop altogether any further consideration, as far as we know, of the South-South Conference, permanent conference in Macau. So why do we want the State Department files? Because we think the State Department files may reflect considerable discussion about what is the most efficient and

G9cWsenC

effective way of either stopping or putting an obstacle to the progress of the U.N.'s consideration of this issue, and it really doesn't take much for the criminal authorities to do that or a lot coordination, frankly, with the criminal authorities. We don't know. We're in a black box here, and that's why we're asking your Honor, based on all the extraneous circumstances that I've outlined, to at least give that serious consideration.

THE COURT: All right. Let me just see whether there's anything else.

Ms. Shroff.

MR. PARK: Your Honor, I'm sorry. I just want the record to be clear and the Court to understand that while Mr. Richenthal says to his knowledge all of the documents that the government received from the U.N. were promptly turned over to the defense, that's not exactly accurate. We are told that there is a tranche of additional documents from the U.N. that they've identified that is scheduled for disclosure that hasn't yet been disclosed, so it is a process. I don't discount what Mr. Richenthal says. I think he should be aware, if he's not already, that there is a considerable lag before we ever get those documents, even if the government intends to make them available, just because of the mechanics of these things.

THE COURT: Yes, and I don't profess to know exactly how that needs to happen, but my main concern and the main

G9cWsenC

thrust of my questions was to make sure that whatever the government got from the United Nations it was turned over and hopefully as expeditiously as possible.  I just want to make sure that it was, in fact, turned over.  In other words, I want to confirm there were no documents in their possession from the United Nations that they had not turned over, because then that's a different argument because it is in their possession at that point in time, if there were such documents, there may be arguments or steps they would need to take to produce them, I don't know, but apparently there are no such documents, even though there are some documents in the pipeline yet to be produced.

Does anybody need a break?

MS. SHROFF:  Can I have one second with Mr. Park before we leave this topic?

THE COURT:  You can have as many seconds as you'd like.  Go ahead.

Yes.

MS. SHROFF:  Your Honor, we may submit to the Court Mr. Yin's position on this issue such that it will not affect any timing or timetable set, that the same schedule that is set for Mr. Park's client can be set for ours.  But we may have something that we would like to submit to the Court on behalf of Mr. Yin in regard to this issue.

THE COURT:  OK.  I guess I want to try and understand

G9cWsenC

the issue.  Are you saying that you're joining in Mr. Park's application?  In other words, as I understand right now, you haven't separately sent your own requests to the United Nations.  I don't know what implications that may mean, in other words, if documents are produced or once they're produced to Mr. Ng, whether or not they then -- I assume, but I don't know.  I assume that since the U.N. basically says that they're willing to cooperate to facilitate the proper administration of justice that it means for both defendants.  I have no doubt that that's the case, but they may require something from you, whether it's a "me too" or something to make sure you're in the queue along the same way so you're included in the conversations or communication, whatever they may be that might occur.  But if what you're saying is something different, in other words, there may be some of these documents that you either don't have any interest in or actually more to the point that you just, for whatever reason, say you're objecting to, that's different.  I guess what I'm asking is what exactly would be the submission that you're giving to me?

MS. SHROFF:  I think it would be the two and a slight augmentation of what Mr. Park has requested, but I'm certain that maybe Mr. Jones and I can speak after and resolve it.

THE COURT:  OK.  That may be, but again it may be just because of the process that's at least been described to me here, you may need to put something into the American mission

G9cWsenC

in order to get the ball rolling in terms of communicating with the United Nations, as I understand it.

MS. SHROFF: That's fine.

THE COURT: OK. I wanted to switch to the issue of the *ex parte* motion the government has filed under CIPA. Ms. Shroff, you had an application and I think Mr. Mo at the July 11 conference indicated that he would join, so I am taking it as a submission that basically both defendants are requesting. At the conference, I asked whether there were any cases where a court has granted defense counsel access to the government's *ex parte* motion papers at this stage of the proceeding. My reading of the submissions and my looking at the cases suggests to me that there aren't any courts that have done so. And I just want to make sure from both parties that I haven't missed anything. Is that accurate?

MS. SHROFF: That's what my research shows, your Honor.

THE COURT: All right. As I understand my authority here, while I have discretion, no other court to date has ruled that the *ex parte* motion filed by the government for me to consider to make a decision about whether or not the documents that they have in their possession, whether or not they are relevant, whether or not they're discoverable, and whether or not the third question is I think -- I can't remember the language. I apologize.

Case 1:16-cr-00308-PAE Document 41-2 Filed 02/09/17 Page 28 of 57    28
Case 1:15-cr-00588-ER Document 69-2 Filed 09/29/16 Page 29 of 98
G9cWsenC

MR. RICHENTHAL: Whether they're helpful, your Honor.

THE COURT: Helpful to the defense. As I understand it, no court has done that, and while I recognize the argument that you make concerning the nature of this case -- in other words, as I understand the argument, this is not a terrorism case and I think the suggestion being that therefore the underlying issues, they don't involve issues relating to terrorism. I don't want to put words in your mouth. With regard to that particular prong of the argument, I thought that was where you were coming from.

MS. SHROFF: That is right, but your Honor, traditionally that's the government's interest. Right? That's the reason that the government holds out and says: Look, in balancing it all out, in balancing the concerns that we have, what is of primary concern is national security. What is of primary concern is the safety of the public. What is of primary concern is that we all remain safe.

Those concerns which generally most courts take into account when deciding these motions are clearly absent. I'm trying to distinguish this kind of a case and the case that every other court has seemingly considered and it's considered only in the national security context.

THE COURT: OK.

MS. SHROFF: And just for the record, today it's clear, as it was before and I'm sure this is fair, we're not

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 29 of 57   29
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/29/16   Page 30 of 98

G9cWsenC

seeking widespread disclosure.  We're seeking disclosure only to cleared counsel.  Right?  Now, the government may stand up and say, Look, we don't know the nature of the application and even though this is not a national security case, there are national security concerns that are nevertheless raised.  And if that's how the Court ultimately analyzes the government's application, then I guess my argument would be diluted to that extent.  But to the extent that what we know of the discovery in the case, what we know of the allegations in the case, it seems to us that the analysis here could be qualitatively different and therefore the results should be qualitatively different.  That said, I want to make extremely clear that the defense bar had waited years for United States v. Booker.

THE COURT:  I'm sorry?

MS. SHROFF:  The ruling in United States v. Booker.

THE COURT:  OK.

MR. PARK:  Nobody thought that would come down, and it did.  And I still continue to believe that CIPA never meant to substitute secrecy over discovery, not just in this case or in any terrorism case.  I would not want the government citing my oral argument today to say she's drawn a distinction between terrorism and nonterrorism cases.  CIPA's not supposed to eat up Rule 16.  CIPA is not supposed to eat up my client's due process rights, not in this case and not in a terrorism case. Our position should be clear, cleared counsel should be

G9cWsenC

entitled to information that they can then seek under a CIPA proceeding to declassify or to get subsequent classification.

THE COURT:  OK.  I think with regard to the argument that the case is substantively different or I should consider the motion as substantively different because it's, I guess, not a terrorism case, CIPA was passed, I think, in 1980. Although terrorism existed back then, it was a totally different situation.  Right?  That was before the '93 bombing of the World Trade Center, before 9/11, before the incident in the embassies overseas.  So it was passed at a time period when there wasn't really consideration of those cases, and the law developed even prior to terrorism cases that the government, and again CIPA provides in itself that "the court may permit the United States to make a request for such authorization in the form of written statement to be inspected by the court alone."  So CIPA provides for that, that the Court in its discretion can have that occur.

I think, Ms. Shroff, you mentioned the argument is somewhat diluted by the fact, and I think that's right because CIPA has been around for a long time.  And while I recognize there are other national security issues other than that relate to terrorism, and even before CIPA's passage, there have been different classifications of documents.

There are many circumstances, I think, when the defense has no access.  In other words, Rule 16 provides and

G9cWsenC

puts in the government's hands the decision-making with regard to what is or is not 3500 material, what is or is not covered by Rule 16, so there may be documents and things out there that the defense doesn't seek.  Here what is occurring, and there have been *ex parte* applications that have been permitted by various courts outside of CIPA's consideration.  I understand the argument that you make, that the defense is probably in the best position to make a determination with regard to relevancy, but here I've got to balance several things, and I have in past cases been asked to make rulings *ex parte* on various issues.

In this circumstance I think the way I'm going to proceed is the way I outlined earlier, because as I read both the Second Circuit's case in <u>Abu-Jihaad</u>, it stated, "Insofar as Abu-Jihaad faults the district court for entertaining the government's motions for a protective order *ex parte*, his argument is unconvincing.  Abu-Jihaad does not dispute that Section 4 of CIPA and Rule 16(d)(1) of the Federal Rules of Criminal Procedure both authorize *ex parte* proceedings. Accordingly, his contention that such submissions are improper 'absent a showing of exceptional circumstance' amount to a challenge of the district court's exercise of discretion to proceed *ex parte*.  The argument fails in light of the decisions in <u>United States v. Aref</u> in which we recognize that where the government moves to withhold classified information from the defense, 'an adversary hearing, with defense knowledge, would

G9cWsenC

defeat the very purpose of the discovery rules.'"

The Court goes on to say, "In such circumstance, a district court's decision to conduct *ex parte* hearings manifests no abuse of discretion," and the Court goes on to cite various cases: United States v. Stewart in this circuit; United States v. Klimavicius-Viloria in the Ninth Circuit, and I'll add to that United States v. Amawi, which isn't cited in the case, but that did reject either obtaining the *ex parte* submissions or the *ex parte* hearings that certain courts have conducted after those submissions had been made.  I think the way we're going to proceed here is I'm going to deny the request by the defense for the government's motion papers that were submitted *ex parte*.  As I've indicated in the past, what we will do, and what I will ask defense counsel to do, is figure out a time or date that would work when I can meet with defense counsel *in camera* under seal with a court reporter so that I can get a sense.

I already have a sense obviously, Mr. Park, Mr. Mo, and Ms. Shapiro, of what some of the defense issues are because in your motion to compel, I think you lay out some of the defense, where you may be coming from in terms of your defense, but this will allow you to give me a more detailed version of that so that I have a better understanding of your views when I review the government's motion and review any of those underlying documents that relate to it.

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 33 of 57   33
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/29/16   Page 34 of 98
G9cWsenC

I'd ask you to consider sort of when that will work, perhaps dates, somewhere in between.  I think we should do it sometime in October, if that's possible, so if you could provide me with dates in October, and obviously you can proceed.  This is something that I'm not directing that you do, but I think it seems to make sense, and other judges have adopted a similar process, but it's up to you after consulting with your clients about how they want to proceed, and obviously I would hear you each separately about that.  I think I've gotten the government's application.  I don't know if there's anything in addition that they think they need to add at all.  That is the way we're going to proceed.

MR. RICHENTHAL:  I just want to say we think our submission speaks for itself, but if the Court wants to hear from us on an *ex parte* basis, obviously we'll make ourselves available.  Section 6 of CIPA expressly contemplates an *ex parte* proceeding if your Honor would want to have one, but we do think the submission speaks for itself.

THE COURT:  Yes, and I think in light of that, what I will say is that after meeting with the defense, obviously I have a certain idea in terms of, Mr. Park, what some of Mr. Ng's defenses will be and I'll have more, perhaps, once I see the motions that get submitted.  But once I communicate with the defense counsel, I may have questions for the government -- I may not -- concerning their position with

G9cWsenC

regard to the documents that are referenced in their *ex parte* submission.

The one thing I will say, and Mr. Park, this may help Mr. Ng's defense deem in focusing on sort of requests to the United Nations, there is an argument, I think, in your papers about other countries, missions -- I don't know what it would be, but other countries and how they were supportive of the idea of having a conference center in Macau. In thinking about it, it seems to me that the mere fact that there may have been support, and just in terms of maximizing what you would seek, it seems to me only becomes relevant, because you mentioned what Mr. Ng's state of mind would be. It only is relevant if Mr. Ng is aware of those particular entities or individuals who represent those entities, what their views are, and I'm not saying that even then it's necessarily admissible. In other words, I guess what I'm asking is, and this is for you to just think about, the mere fact that there may have been others within the United Nations who basically think, Well, this is a good idea, vis-à-vis this criminal case and Mr. Ng or Mr. Yin's defense, I don't see it being something that is necessarily connected to a defense other than impacting some individual's state of mind, in other words, that they didn't formulate the intent that's necessary for the bribery statute.

I think the argument was everybody believed it was a good idea, but unless Mr. Ng was aware of those positions --

G9cWsenC

and again, I'm in a way just talking about what I was thinking about it as I was reading the motions -- it would seem to me that the documents, the things he was unaware of couldn't impact his state of mind.

Yes.

MR. PARK:  A couple of things, your Honor.  Obviously we state the obvious, it is the government's burden of proving a corrupt intent.

THE COURT:  Correct.

MR. PARK:  How do they do that with respect to somebody who was espousing a program that he believes is something that's going to widely receive acceptance and even encouragement and support?  And in fact, if it turns out, if the documents show, that in fact the other members of the general assembly, especially those in the South-South nations, which comprise the vast majority of the United Nations membership, also say that could be a good idea, so it's their burden, and I think that from a defense perspective as we figure out how to prepare for the defense on the issue of corrupt intent, it's obviously material.  Now, as to whether it is ultimately exculpatory, we don't know yet, but I think it's beyond possible that it will be material to the defense.

That's the first part.  And Judge, I think everyone should assume that the defense will put on a defense, and so we can't sit here now, and I don't think the Court or the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:16-cr-00308-PAE Document 41-2 Filed 02/09/17 Page 36 of 57    36
Case 1:15-cr-00588-ER Document 69-2 Filed 09/29/16 Page 37 of 98
G9cWsenC

government can be in a position to say, Well, how do we know whether he knew or not. With respect, I don't think that's the test for whether we should get access to those documents for the purposes of defense preparation.

THE COURT: I understand. I mean, there's preparation, but I guess what I'm saying is when you're thinking about documents to focus on, documents and individuals whom Mr. Ng may have had interaction with may be a closer call than if he never heard about the documents, in other words, didn't know anything about. I'm not saying what I'm going to rule on that. I'm just saying in my thinking about it, I'm not sure in a criminal case how it becomes relevant that people all thought it was a good idea.

MR. PARK: Here's why, Judge, because this is the appeal to the jury. Right? A person makes a decision as to whether he's going to step over the line and become a criminal or not. That's what criminal intent is about, the willfulness, desire and willingness to break the law.

THE COURT: Yes.

MR. PARK: Now, if he genuinely believes and the audience to which this program is directed generally believes this is a good idea, why would he break the law?

THE COURT: Here's the problem, though, and we don't need to get into this back and forth. I'm just saying in terms of what you're seeking to get in prioritizing things, I'm

G9cWsenC

giving you my initial view.  I know this is going to be a subject of *in limine* motions, but there's a disconnect between what Mr. Ng, and again we're talking hypothetically here obviously.  But there's a disconnect if he's unaware.  He may think and suspect that everybody at the U.N. thinks this is a good idea, and certainly the countries that are part of the South-South contingent would think it's a good idea, and that can be expressed in some way, but if he doesn't know that -- I mean, he's assuming that.  In other words, unless he's aware of something that would change his state of mind, that would impact -- again, it's whether or not he had the criminal intent to do what the government's claiming he did.

MR. PARK:  And I think this will be obviously the subject of a more thorough *in limine* motion.

THE COURT:  Yes.

MR. PARK:  But I will just leave the Court with this thought, because I think it is important for your Honor to have an orientation which understands our position, the point that you make is a big if, Judge, if he didn't know or if he was not aware of the members' general views and receptivity to this, that's a big if.  We don't have to hurdle that if obviously in order for this to ultimately be discoverable.

THE COURT:  Right.

MR. PARK:  Whether it becomes ultimately admissible, that's a separate question for *in limine*, I agree with that,

G9cWsenC

Judge.

THE COURT:  Yes.

MR. PARK:  And it may well be something we submit, but we have to get it first.

THE COURT:  Yes, I understand.  I wanted to give you some of my preliminary thoughts as I was thinking about the different categories of documents that you were seeking to get.

MR. PARK:  Thank you, your Honor.

THE COURT:  OK.  Trial.  We're sort of coming full circle, and this is sort of an outline.  I know, Ms. Shroff and Ms. Glashausser, because of your trial schedule and other issues that you've expressed concern about that date.  This is what I'm going to propose.  I'm going to hold that date right now, because I don't know what's going to happen in those other cases.  I understand that there will come a point where I'll have to make a decision about whether we're going forward on the 23rd, but I also want to see, quite frankly, what the situation is with the documents that I expect, however many they may be, will come from the U.N. and how long that's going to take.  What I'm saying is, look, I've expressed it in the past, that January 23 was the date we were going to trial and I want to hold that.

Having said that, I understand that Ms. Shroff and Ms. Glashausser are the most knowledgeable people at the Federal Defenders about the case.  Oftentimes there have been

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 39 of 57   39
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/29/16   Page 40 of 98
G9cWsenC

situations, and usually it's not with the defense, it's usually with the government, where a judge will say, OK, someone else can try the case.  I'm not going to obviously do that here; I'm not going to suggest that that even occur.  You've been on the case long enough.  But I'm going to wait and see if we can make that January 23 date work, because I know that Mr. Park and Mr. Mo and Ms. Shapiro on behalf of Mr. Ng want to go to trial on that date, as do I.

Having said that, we're not trying this twice.  That simply makes no sense.  Unless you can in the scheme of this case where there really aren't any other issues, other than the availability of counsel and perhaps the documents that are going to be produced -- in other words, there's no other issue that would warrant severance.  At least at this stage, I would exercise my discretion and say we're going to try the cases together obviously, because there's nothing at least in my mind that would prevent these cases from being tried together, as most cases where defendants are accused under one indictment and in the same counts.  That's my thought on that.  I think that would probably make sense.

Let me ask this, Ms. Shroff, and it sounds like it's really the Judge Ramos case, are there any court appearances between now and the trial date, and if so when are they?

MS. SHROFF:  May I just tell the Court something?

THE COURT:  Yes.

G9cWsenC

MS. SHROFF:  Here's the thing.  The government in the Gammal case, which is the Judge Ramos case, served their FISA notice on July 13 of 2015.  Mr. Gammal was arrested more than a year before that.  So since they always say they're one office, boohoo to them, because this is not our doing in the Gammal case; they did it, and that is why we were forced to adjourn that trial date.  Although I may not have told Judge Ramos about this trial date, we tried to pick a trial date in Gammal which was closer to November so we could have enough time between two lawyers to still plan to be prepared on Jeff Yin, but the agent in the Gammal case, his wife was having a baby or is still having a baby, so we don't want to say no to his request for additional time, which is why that date was pushed to December 5.

I'm giving you this long-winded story just so you know that we didn't want to be unmindful of the agent's personal life, so we agreed to that and also because I had very candidly told this Court that my January 23 trial date was not a date that I could promise that I could stick to completely.  Right?

THE COURT:  It's on the record.  You did couch, it wasn't an unequivocal, "yes, I can go forward, no problem." You did mention the trial before Judge Wood at that time.  I'm just trying to find a place for this case to go to trial and also accommodate -- obviously, Ms. Shroff, if you have a detained defendant, for reasons as I'm sure everybody knows,

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:16-cr-00308-PAE Document 41-2 Filed 02/09/17 Page 24 of 57 41
Case 1:15-cr-00588-ER Document 69-2 Filed 09/29/16 Page 42 of 98
G9cWsenC

that case, especially if it's an older case, is a case that you should put priority to. The only reason I was asking is I want to set another date when we can come back or when I can get an update from the parties on where things stand in terms of getting whatever documents there may be from the U.N. and including whether your schedule has freed up.

MS. SHROFF: My final pretrial conference before Judge Ramos is on November the 21st.

THE COURT: All right. Why don't we do this. Why don't we have a status update from the parties, basically a letter, why don't we say in a month so that I have a sense of where things are going in terms of documents from the United Nations. And also quite frankly, obviously try and get a sense, and this is directed to Mr. Ng's counsel and also the government, about what the timing's going to be about getting these documents produced.

I guess, Mr. Richenthal, what I would ask is, if you can, in thinking about how the government obtained these documents, how much time it took, speak with defense counsel and sort of impart to them about when you may have made your initial request. Just give them a sense of timing so that I have a sense of timing, or even if you don't want to give them a sense, give me a sense so that I know whether or not January 23 is realistic even for Mr. Ng, because if it's not, what I'd want to do is get a date that everybody is available that we

G9cWsenC

can try this case and not leave a trial date that is

unrealistic.

MR. RICHENTHAL:  I'm happy to give your Honor a sense

and Mr. Park a sense.  It's substantial.  In our experience,

it's typically been measured in months, not weeks and certainly

not days.  We asked for a lot less than Mr. Ng has asked for,

and it still took a very long time, and I understand why.

That's not to be negative about the U.N.  Given the breadth of

Mr. Ng's requests, I can't imagine how much time it will take.

THE COURT:  I hope there has been a little bit of at

least greasing of the wheels, so to speak, because I don't know

how often the U.N. gets requests like this.  I'd hazard to

guess it may not be all that often.  I don't know.  I'm sure on

their end they're also used to requests that are not related to

court proceedings as opposed to other requests that they get

through the State Department or even, I guess, privately.  So

if you can give me a sense in a month -- does October 12 fall

on a weekday -- of where things stand, and once I get that

communication, I'll decide whether or not we need to get

together and talk about an alternative trial date.

What I would say is this.  If it becomes clear to you

that the 23rd, and I guess this is directed to Mr. Ng's team,

that you're not going to get the documents in time such that

you would be able to review them and that you would be able to

make use, obviously the defense doesn't need to submit any

G9cWsenC

documents and doesn't need to put on any witnesses.  Having said that, if you have a sense of what you're thinking about doing, and also, quite frankly, since we've discussed that these documents might be the subject of an *in limine* motion, we're going to need to know in the next month what the scope of those documents are before the trial.  It may be that I make rulings on the *in limine* motions and you never use the documents, but it may be that you want to use them, and we have to know that sooner rather than later both in terms of -- and again, I'm not saying how either side intends to try the case, but in terms of how you're going to open, and the like.  So I want to try and do that in advance.  If it turns out you're going to say there's no way we're going to get this stuff in time, meet and confer, figure out dates in the future, obviously including Mr. Yin's counsel, and propose dates for me.

I can tell you just in terms of the criminal trials I have, and obviously it's not going to be anything earlier.  The only trial I have after January is in April.  No.  I have a February trial, February 21, which will last why don't we say three weeks, just to be on the safe side.  The allegation is kidnapping that resulted in death, so why don't we say three weeks for that, and then I have a trial in April, and that's a detained defendant's case, and April is also a detained defendant's case, April 27, so the end of April.  Just with

G9cWsenC

that in mind -- April 17.

MR. PARK:  Judge, how long is that expected to take, that trial?

THE COURT:  Right now there are still nine defendants, so depending upon who's in, it's going to take several weeks. Right now some of the defendants have made a severance motion, but at least one part of that case will go forward on that date, on the 17th, and it will last three weeks, again, just to be on the safe side.  I guess the first case is United States v. O'Neill, and this is just in case you want to speak to the counsel on either side that are on that case, 16 Cr. 29.  The other case is United States v. Jones, which is 15 Cr. 153, to get a better sense, because again what do I know in terms of how long something's going to take.  Speak both with folks in the U.S. Attorney's Office and the defense counsel on those cases to get a sense from them of what's going to happen.  But communicate with one another.  If in fact it looks like the 23rd is not going to work, we'll come up with another date.

Is there anything else?

Mr. Park.

MR. PARK:  Yes, your Honor.  There is the issue of the postarrest statement.

THE COURT:  Yes.  Have you been able to talk to the government about the postarrest statement?  Let me confirm something just for myself, because I couldn't quite figure it

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 45 of 57   45
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/23/16   Page 46 of 98
G9cWsenC

out.  Is it that the defense team got a disk but not a transcript and that your team created a transcript?  Is that what happened?

MR. PARK:  Yes, your Honor.

THE COURT:  OK.

MR. PARK:  First, before our firm was involved in this case, one of the first things that was disclosed was a videotape of the postarrest statement of our client, Mr. Ng.

THE COURT:  Yes.

MR. PARK:  Apparently when that was sent over to Mr. Brafman at the time, they put on an index, a discovery index, of all the things that they'd produced, they put the "confidential" legend on that index.  I'm not aware that that confidential legend appears actually on the video itself, just on the index of discovery that they produced.

THE COURT:  OK.

MR. PARK:  And if I'm wrong about that, I stand corrected, but in any event, when we subsequently started working on the motion to compel, I was not aware that there had been any designation.

THE COURT:  It was a mistake.

MR. PARK:  I had never seen anything like that.  It would never have occurred to me that a postarrest statement would be designated as confidential.  We then prepared a transcript of that interview.  It's a rough transcript that our

G9cWsenC

firm prepared, so it was that transcript that was then appended to our motion to compel.  The government then asked us to agree to withdraw that.  We had that dialogue, as your Honor is aware.

THE COURT:  Yes.

MR. PARK:  And then your Honor agreed because we were not objecting to it at that time to withdraw that transcript just because we had not complied with the procedures that we had thought applied.  Obviously now we're making a motion to suppress the statements.  It is critical that that transcript and video come into evidence before your Honor so that your Honor can view it and rule on it.  We do not see any basis for designating that document, either the transcript or the video, as confidential.  It is an exchange that the government had with our client before there was any protective order in place at all, so everything that appears in that interview clearly was not subject to protective order.  The government cannot unilaterally decide that they're going to designate something as confidential.  It violates public policy.  There's no basis for it.  And the other thing Ms. Shroff pointed out, as we were discussing this just on Friday, is that paragraph 5 of the protective order actually exempts the scope of the protective order and the confidentiality when the parties are making a motion in connection with the document.

THE COURT:  To just be clear, it may be that the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G9cWsenC

language that you used was that you were withdrawing it.  I think what has happened in reality -- I'm reviewing it in connection with your motion.  It's something that has been, I think, and I'm not sure, I haven't checked recently, it may be only accessible to the Court, to me, and just not to others. So in connection with any motion you make, and putting aside the confidentiality, I'm absolutely going to consider it.  In other words, whether it's confidential or not, it's a document that will be before me and I'll make a ruling on that basis. But let me ask this, because I just don't know what the basis is, have you spoken since?

MR. PARK:  Yes, your Honor.

THE COURT:  OK.

MR. PARK:  Mr. Richenthal told me before this conference began this morning that the basis is because there are some references to parties or targets, investigative issues, and they would be fine as long as all of that is redacted.  I don't think that's appropriate.  I don't think you get to redact something after the fact.

THE COURT:  Go ahead.

MR. PARK:  Your Honor, I just don't think that's appropriate.  If the agents had sensitivities to those issues, they should not have specifically referenced it.  It's akin to muzzling our client, because he has a recollection of everything that transpired.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 48 of 57   48
Case 1:15-cr-00588-ER   Document 69-2   Filed 09/23/16   Page 49 of 98
G9cWsenC

THE COURT:  There are different issues here.  Let me be clear.  It's not muzzling your client because that statement is going to be before me.  All of those things will be before me.  I'm not just reading a redacted version, I'm reading a full version.  Again, whether there was a protective order in place, or not, the government may make an application now because they have an ongoing investigation so they would like those names not in the public record, and they can make that application.  But with regard to your motion, let me be clear, I'm considering, and I don't know what the relevance of those names or places may be, I don't know what relevance they have to your motion or not, but they will be before me.  And I understand, we can revisit because now I don't know and perhaps you can think about this and we can talk about it at a later date, I would need to have a sense of what those redactions are, and I'm not sure that now is the time to sort of go through that, because it sounds to me as if there's no objection to I think much of the statement, but there may be an objection to parts of it.

Yes, Ms. Shroff.

MS. SHROFF:  I want to be very clear on Jeff Yin's postarrest statement.  The protective order that we signed specifically states that we can make public and attach to our motion papers Mr. Yin's postarrest statement.

THE COURT:  OK.  I'm not precluding you.  There are

Case 1:16-cr-00308-PAE   Document 41-2   Filed 02/09/17   Page 49 of 57   49
Case 1:15-cr-00388-ER   Document 69-2   Filed 09/29/16   Page 50 of 98
G9cWsenC

two separate issues here.  There's one thing about attaching it to your motion.  Absolutely, no question you can attach it to your motion and it's something I'll consider.  There's another issue about whether or not when someone goes on ECF on our PACER and they click on it, they'll have access to the whole document.

MS. SHROFF:  But that is the motion.  Motions are filed publicly.  The public has an interest in hearing about the motion.

THE COURT:  Ms. Shroff, I'll decide that once in fact, and I don't even know if they're the same issues with regard to Mr. Ng and what interest Mr. Ng has.  I understand what the public interest is -- you don't have to tell me about that, but what interest Mr. Ng has with regard to those particular items that the government is seeking to redact.

MS. SHROFF:  I'm not speaking for Mr. Ng.  I'm speaking for Mr. Yin.

THE COURT:  I'm sorry.  I apologize.

MS. SHROFF:  And No. 2, the government used my client's postarrest statement when they sought to detain him.  They didn't hold back.  Right?  They took whatever helped them, whatever made them look good.  They put it out there.  It was quoted everywhere, all over the newspaper.  The New York Times had a photo of Mr. Yin in custody making his postarrest statement, and now they can't suddenly say because they don't

G9cWsenC

want the whole postarrest statement revealed because somehow now they believe it makes them look bad, or for whatever their reason is, somehow or the other Mr. Yin's statement cannot be made public.  But most of all, your Honor, we would very much appreciate if the Court were to ask the United States Attorney's Office to please inform the defense in writing, not in a conference call, not in a talking-points situation, in writing, what is their basis to state that when we're filing a public motion to suppress our client's postarrest statement it may not be accessible to the public, because we have asked and the government, instead of simply sending us a written response, like most lawyers would, insist that their reasoning only be communicated to us in a conference call, and we would like to know in writing so that we can then take their argument and write to the Court and seek relief.

THE COURT:  How about this; let's do it a different way.  Do you know, Ms. Shroff, what portions of your client's postarrest statement the government is proposing redacting?

MS. SHROFF:  No, because --

THE COURT:  Stop.  This is what I'm going to propose.  You get that.  I'm directing the government to provide to the defense a redacted version of whatever the statements are to both counsel, and obviously as I understand it --

Mr. Park, is it all right if they use your draft version to indicate if there are additional places -- I just

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G9cWsenC

want everybody to know what's being redacted.  Once we have that, then I'll be able to then assess whether or not the materials that are redacted are things that the public should have access to.  I think that's the way to proceed.

MR. PARK:  Just a couple things.  That's fine, Judge.  Just to be clear, though, our draft has nothing to do with the statements of Mr. Yin.

THE COURT:  I understand.

MR. PARK:  The second thing is what Ms. Shroff alludes to is a communication I had with Mr. Richenthal this past Friday where I said, Put it down in writing so we can then be ready to discuss where we disagree.  He declined to do that.  So now we're in a position where you're now directing him to tell us.  We were supposed to file the motions today.  I'm fine with the process, Judge, if he will put down, using our draft, the portions that he would like us to redact and if there's no issues from our perspective, then there isn't.  If there is, we'll bring it to your Honor's attention.

THE COURT:  You can file those.  I don't know whether Mr. Yin is making a challenge to his postarrest statement, but assuming he is, file those under seal right now.  You have my permission to do that.  I understand you have an issue, but I have to resolve this issue, and I understand that the press has an interest in this, but I ask that to the extent you express your displeasure, you're more than welcome to come speak with

G9cWsenC

me about that, because I need to resolve this issue. And right now the issue isn't crystallized for me, so I'd like you to do that, and the parties should meet and confer about that.

The other thing is more generally, and I understand perhaps the issue with regard to this specific issue that you didn't necessarily want to put in there because then the letter itself you might view because you have to indicate something that you believe should be under seal, but having said that, I'd like the parties to do a better job of communicating with each other and not talking past one another. I received, and again, I understand sometimes it's easier to write a letter than get in touch with folks on the phone, but I received, and this is separate and apart from this last issue, the transcript issue, which I think -- does that process work?

And as I said, I'm considering, and I understand that your motions are due today, Mr. Park, so you can file it under seal.

Ms. Shroff, you have some more time, so however you want to proceed; hopefully we'll have resolved that issue by that point in time. What will be filed, and once you agree, is a redacted copy of the statement, both Mr. Ng's statement and Mr. Yin's statement. They will be filed and then I'll make a decision about whether or not the portions that are redacted should be unredacted, as I understand it.

Let me ask the government this. Are we talking

G9cWsenC

about -- I mean, I'll see the redactions when we get them, but it's my sense that we're not talking about wholesale redactions of paragraphs or pages; we're talking about words, names, dates, places, and the like.  But having said that, I'll wait to see exactly what it is.  But let me be clear that while I'm giving permission to file the statement by Mr. Ng under seal now, what I expect is that a redacted statement get filed promptly once the parties have communicated what the government's position is with regard to those redactions, because that is something that, A, my individual rules provide for and, B, there are substantial portions of the statement which I think there's no question that the public should have access to.

Getting back to my other point about communications, my sense is, based upon the advocacy to date on the case, there is going to be a substantial amount of communication with me and with my staff.  For example, I got four or five letters related to scheduling.  I'd ask that once you realize that there is some dispute, speak to one another so that everybody understands exactly where things stand, and I understand there was a little bit of people talking past one another or talking to each other through the letters, and that shouldn't be the case.  There is going to be time during the case when there are motions filed during the course of the trial where that's what's going to happen, because of the nature of trials, but at

G9cWsenC

this stage, I'd like to try and do a little better job of communicating, understanding that obviously you have to zealously advocate on the defense side for your client.  I'm not saying don't submit something.  What I'm saying is, if you can, talk it through before bringing it to my attention, if you can.  If not, look, I'm not going anywhere.

Yes, Mr. Park.

MR. PARK:  Your Honor, I'd certainly endeavor to do that.  Inasmuch as we are no longer being directed to file today given the timetable, we have further revisions to the draft, so it may make sense for us to refine that and share that with the government so they can tell us of those revisions what should be changed and then we can file ultimately the redacted as well as the unredacted under seal.

THE COURT:  Yes, and while we're talking about drafts and the like, does the government have an objection? Typically, when the government produces drafts, they do so saying that you're not going to use it in connection with some sort of cross-examination.  From what I've heard, Mr. Ng has not made that request.  I would assume it's under the assumption when the government takes that position that you would not utilize the drafts in connection with any trial, in other words, to cross-examine Mr. Ng, for example.

MR. RICHENTHAL:  Absolutely, your Honor.

THE COURT:  OK.  I just wanted to be clear.  So it's a

G9cWsenC

draft.

MR. PARK:  Thank you, your Honor.

THE COURT:  We understand it's a draft, and we'll just proceed from there.  That's fine.  You should refine it as you see fit, and talk about when it's going to be final and talk about, as the government's going to produce its own version obviously down the line, hopefully you can agree on exactly what the correct transcription should be, but that's down the line.

MS. SHROFF:  Your Honor, Mr. Yin's statement is in English, so there's no transcript to be given, and so the government should let us know promptly what it is.

THE COURT:  Tell you what.  It's 2:00, but if you have time, if the government has time, I don't know whether you have the statement here, or you can call Ms. Shroff after the conference and just let her know what the redactions are.

MR. RICHENTHAL:  We do have the statement here, but it's a video, and it's quite lengthy.  Mr. Ng's statement is more than two hours long.  Mr. Yin's statement is more than an hour and a half long.  While we have a sense of what our concerns are, I don't have second markings, and so it's going to take some effort for us to provide those clips, so to speak, but we'll do so expeditiously.

THE COURT:  Fine.  Is there anything else we need to deal with today?

G9cWsenC

MR. RICHENTHAL: I don't recall whether your Honor excluded time through January 23. I think you did, but in the event you didn't, we would respectfully request that time be excluded so that the defense can prepare and file its motions, the parties may continue to produce discovery, deal with this issue involving transcripts, and so on and so forth.

THE COURT: I think in my order that was filed on the docket July 11, I did exclude time and I would exclude the time now also for the same basis, to allow review of discovery, pretrial motions, and the ends of justice served by the exclusion outweigh the interests of the public and the defendants in a speedy trial.

Yes, Mr. Park.

MR. PARK: Judge, just so it's clear, there are a number of different motions, motion to suppress, motion for bill of particulars, motion to dismiss. Just so it's clear, we will file one motion after we've sorted out the draft and this postarrest statement issue and file it. It won't be today but certainly as soon as you feel that all that's been clarified.

THE COURT: That's fine. As I mentioned, you have the same amount of time, to the 26th, as Ms. Shroff, but it sounds like you're going to be able file your motion earlier.

MR. PARK: Yes, your Honor. That's correct.

THE COURT: And that will allow you to have more time. The only thing I will say is that you still have your reply on

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

G9cWsenC

the motion to compel, due on the 19th.

        MR. PARK:  Yes, your Honor.  Thank you.

        THE COURT:  Ms. Shroff.

        MS. SHROFF:  No, I have nothing more.

        THE COURT:  All right.  Thank you very much for coming in.  I'm sure you didn't expect it would be this long, but we did accomplish some things today.  We'll stand adjourned.

        (Adjourned)